UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ALAN WIDLANSKY,

    Defendant.

Hon.

Case No.

Case: 2:23−cr−20054
Assigned To : Goldsmith, Mark A.
Referral Judge: Grey, Jonathan J.C.
Filed 1/25/2023
SEALED MATTER (LH)

VIO: 18 U.S.C. § 1349

## INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

### General Allegations

At all times relevant to this Information:

### The Medicare Program

1. The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were 65 years of age or over or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS"). Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3. Medicare covered different types of benefits and was separated into different program "parts." Medicare "Part A" covered certain eligible home health care costs for medical services provided by a home health agency ("HHA"), also referred to as a "provider," to persons who already qualified for Medicare and who additionally required home health services because of an illness or disability that caused them to be homebound. Medicare "Part B" covered the cost of physicians' services, medical equipment and supplies, diagnostic laboratory services, and home health services.

4. National Government Services was the CMS intermediary for Medicare Part A in the state of Michigan starting in or around May 2015. AdvanceMed (now known as "CoventBridge") was the Zone Program Integrity Contractor ("ZPIC"), meaning the Medicare contractor charged with investigating fraud, waste, and abuse.

5. Wisconsin Physicians Service ("WPS") administered Medicare Part B for claims arising in the state of Michigan. CMS contracted with WPS to receive, adjudicate, process, and pay claims.

6. Payments under Medicare were often made directly to a provider of goods or services, rather than to a Medicare beneficiary. These payments occurred

when the provider submitted the claim to Medicare for payment, either directly or through a billing company.

7. By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement, and furthermore, certified that they would not knowingly present, or cause to be presented, false and fraudulent claims. To receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all of the provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors.

8. Upon certification, the provider, whether a clinic, a HHA, or an individual, was assigned a provider identification number for Medicare billing purposes (referred to as a "National Provider Identifier" or "NPI"). When the provider rendered a service, the provider submitted a claim for reimbursement to the Medicare contractor or carrier that included the NPI assigned to that provider.

9. In order to receive reimbursement for a covered service from Medicare, a provider was required to submit a claim, either electronically or using a form (e.g., a CMS-1500 form or UB-92) containing the required information appropriately identifying the provider, beneficiary, and services rendered.

10. Providers were given, and provided with online access to, Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations. Providers could only submit claims to Medicare for services they rendered, and providers were required to maintain patient records to verify that the services were provided as described on the claim form. These records were required to be sufficient to permit Medicare, through its contractors, to review the appropriateness of Medicare payments made to the provider.

11. Health care providers could only submit claims to Medicare for reasonable and medically necessary services that they rendered. Medicare regulations required health care providers enrolled with Medicare to maintain complete and accurate patient medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted. Medicare required complete and accurate patient medical records so that Medicare could verify that the services were provided as described on the claim form. These records were required to be sufficient to permit Medicare, through WPS and other contractors, to review the appropriateness of Medicare payments made to the health care provider.

12. Medicare only covered home health services, if, on the claimed dates of service:

4

  a. the Medicare beneficiary was under the care of a doctor and receiving services under a plan of care established and reviewed regularly by a doctor;

  b. the Medicare beneficiary needed, and a doctor certified that the beneficiary needed, one or more of the following: (i) Intermittent skilled nursing care; (ii) Physical therapy; (iii) Speech-language pathology services; or (iv) Continued occupational therapy;

  c. the HHA must have been approved by Medicare (Medicare-certified); and

  d. the Medicare beneficiary was homebound, and a doctor certified that the Medicare beneficiary was homebound.

### The Relevant Clinic

13. Infinity Visiting Physician Services, PLLC ("IVPS") was a Michigan company doing business in the Eastern District of Michigan. IVPS was enrolled as a participating provider with Medicare and submitted claims to Medicare.

### The Home Health Agencies

14. Home Health Agency 1 was a Michigan corporation doing business in Bingham Farms, Michigan, and other locations within the Eastern District of Michigan. Home Health Agency 1 was enrolled as a participating provider with Medicare and submitted claims to Medicare.

15. Home Health Agency 2 was a Michigan limited liability company doing business in Bingham Farms, Michigan, and other locations within the Eastern District of Michigan. Home Health Agency 2 was enrolled as a participating provider with Medicare and submitted claims to Medicare.

16. Home Health Agency 3 was a Michigan limited liability company doing business in West Bloomfield, Michigan, and other locations within the Eastern District of Michigan. Home Health Agency 3 was enrolled as a participating provider with Medicare and submitted claims to Medicare.

17. Home Health Agency 4 was a Michigan limited liability company doing business in Bingham Farms, Michigan, and other locations within the Eastern District of Michigan. Home Health Agency 4 was enrolled as a participating provider with Medicare and submitted claims to Medicare.

18. Home Health Agency 5 was a Michigan limited liability company doing business in Bingham Farms, Michigan, and other locations within the Eastern District of Michigan. Home Health Agency 5 was enrolled as a participating provider with Medicare and submitted claims to Medicare

### The Defendant and Other Individuals

19. Defendant ALAN WIDLANSKY, a resident of Oakland County, Michigan, was a physician licensed in the State of Michigan who was enrolled as a

participating provider with Medicare for IVPS from in or around February 2006 through at least October 2020.

20. Owner 1, a resident of Oakland County, Michigan, controlled, owned, or operated IVPS.

### COUNT 1
### 18 U.S.C. § 1349
### (Health Care Fraud Conspiracy)

21. Paragraphs 1 through 20 of this Information are re-alleged and incorporated by reference as though fully set forth herein.

22. Beginning in or around September 2016, and continuing through in or around October 2020, in Oakland County, in the Eastern District of Michigan, and elsewhere, ALAN WIDLANSKY did knowingly and willfully combine, conspire, confederate, and agree with Owner 1, and others known and unknown to the United States Attorney, to execute a scheme and artifice to defraud Medicare, a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, 1347.

**Purpose of the Conspiracy**

23. It was a purpose of the conspiracy for ALAN WIDLANSKY, Owner 1, and their co-conspirators, to unlawfully enrich themselves by, among other things: (a) submitting or causing the submission of false and fraudulent claims to Medicare for claims based on illegal kickbacks and bribes; (b) submitting or causing the submission of false and fraudulent claims to Medicare for services that were (i) medically unnecessary; (ii) ineligible for Medicare reimbursement; and/or (iii) not provided as represented; (c) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of the proceeds from the fraud; and (d) diverting proceeds of the fraud for the personal use and benefit of the defendant and his co-conspirators, and to further the fraud.

**Manner and Means**

The manner and means by which the defendant and his co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

24. ALAN WIDLANSKY falsely certified to Medicare that he would comply with all of Medicare's rules and regulations, including that he would not knowingly present or cause to be presented a false and fraudulent claim to Medicare.

25. Owner 1, ALAN WIDLANSKY, and others caused the submission of false and fraudulent claims for home health services purportedly provided by Home Health Agency 1, Home Health Agency 2, Home Health Agency 3, Home Health

8

Agency 4, and Home Health Agency 5, that were procured through illegal kickbacks and bribes, medically unnecessary, ineligible for Medicare reimbursement, and/or not provided as represented.

26. Between on or about September 2016 and October 2020, ALAN WIDLANSKY, at the direction of Owner 1 and while employed by IVPS, certified Medicare beneficiaries as being homebound and/or needing skilled nursing services, physical therapy, or occupational therapy, when in fact they were not homebound and/or did not need the ordered services. These Medicare beneficiaries were then referred to Home Health Agency 1, Home Health Agency 2, Home Health Agency 3, Home Health Agency 4, and Home Health Agency 5, to receive home health services, for which claims were subsequently submitted to Medicare.

27. Between on or about September 2016 and October 2020, Owner 1, ALAN WIDLANSKY, and others submitted and caused the submission of false and fraudulent claims to Medicare, by and through Home Health Agency 1, Home Health Agency 2, Home Health Agency 3, Home Health Agency 4, and Home Health Agency 5, in an approximate amount of at least $426,382.69 for services that were obtained through illegal kickbacks and bribes, medically unnecessary, ineligible for Medicare reimbursement, and/or not provided as represented.

All in violation of Title 18, United States Code, Section 1349.

9

## FORFEITURE ALLEGATIONS
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461;
18 U.S.C. § 982(a)(7))

28. The above allegations contained in this Information are hereby incorporated by reference as if fully set forth herein for the purpose of alleging forfeiture against the defendant, ALAN WIDLANSKY, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(7); and Title 28, United States Code, Section 2461.

29. Pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(7), together with Title 28, United States Code, Section 2461, as a result of the foregoing violation as charged in Count 1 of this Information, the defendant, ALAN WIDLANSKY, shall forfeit to the United States: any property, real or personal (a) which constitutes or is derived from proceeds traceable to the commission of the offense, and (b) that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

30. Such property includes, but is not limited to, a forfeiture money judgment, in an amount to be proved in this matter, representing the total amount of proceeds and/or gross proceeds obtained as a result of the defendant's violation as charged in Count 1 of this Information.

31. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), the defendant, ALAN

WIDLANSKY, shall forfeit substitute property, up to the value of the properties described above or identified in any subsequent forfeiture bills of particular, if, by any act or omission of the defendant, the property cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property that cannot be subdivided without difficulty.

DAWN N. ISON
UNITED STATES ATTORNEY

GLENN S. LEON
Chief
Criminal Division, Fraud Section
U.S. Department of Justice

REGINA R. MCCULLOUGH
Chief, Health Care Fraud Unit
United States Attorney's Office
Eastern District of Michigan


s/ Shankar Ramamurthy
SHANKAR RAMAMURTHY
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (202) 924-5368
Email: shankar.ramamurthy@usdoj.gov

Dated: January 25, 2023

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | Judge Assigned: |
| ☐ Yes   ☒ No | AUSA's Initials: |

**Case Title:** USA v. Alan Widlansky

**County where offense occurred:** Oakland and Wayne

**Check One:**   ☒ Felony   ☐ Misdemeanor   ☐ Petty

____ Indictment/ ✓ Information --- **no** prior complaint.
____ Indictment/____ Information --- based upon prior complaint [Case number:                    ]
____ Indictment/____ Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** _____   **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

January 25, 2023
Date

Shankar Ramamurthy
Trial Attorney
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone: 202-924-5368
Fax:  N/A
E-Mail address: shankar.ramamurthy@usdoj.gov
Attorney Bar #: IL 6306790

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.